Wanamaker, J.
In the early part of May, 1908, The Euclid Avenue Trust Company of Cleveland, Ohio, was a corporation engaged in the general banking business in the city of Cleveland. It became financially embarrassed; a meeting of its directors and officers was held on Sunday, May 3, 1908, among which were eight of the thirteen directors, including E. H. Klaustermeyer, plaintiff in error, R. S. Thomas, secretary and treasurer, and W. J. Gawne, Jr., assistant secretary and treasurer, F. H. Ginn, attorney for the said trust company, John S. Oram and other directors. The persons present included the active officers and managers of the trust company.
After the disapproval of' numerous plans, it was finally agreed that each director should loan the bank five thousand dollars, if possible, the same to be done within the next two or three days, and those directors who were not then indebted to the trust company, among whom were John S. Oram and this' plaintiff in error, Klaustermeyer, “should be given security for such deposit from among the collateral securities then owned by and in the possession of said trust company.”
On Monday, May 4, 1908, pursuant to said agreement, the said director Oram loaned the trust company five thousand dollars, and at the time of such loan the trust company delivered to said Oram collateral securities to guarantee the payment df said loan. Said securities were selected by W. J. Gawne, Jr., assistant secretary and treasurer *144 of the trust company, and by him delivered to said Oram.
On Tuesday, May 5, 1908, the plaintiff in error, Klaustermeyer, borrowed five thousand dollars of The Garfield Bank at Cleveland, and in pursuance of said Sunday agreement, loaned said sum to the trust company. At the time he turned over said money to said trust company “he was in a hurry to keep a business engagement and hurriedly left the bank without receiving any collateral for his said deposit, stating to one of the bank officials that because of his hurry he would not stop to get his securities, but would get them the next time' he called at the bank.”
Neither at that time nor any time thereafter were any securities of the said trust company selected, segregated or delivered by said trust company to said Klaustermeyer for the security of said loan of five thousand dollars.
On May 8, 1908, the said trust company made an assignment for the benefit of its creditors to The Cleveland Trust Company without having selected, segregated or delivered to said Klaustermeyer any securities pursuant to said Sunday agreement.
The single question for our determination is: Did Klaustermeyer have an equitable lien on the securities in the possession of The Euclid Avenue Trust Company, which were assigned and transferred to The Cleveland Trust Company on May 8, 1908?
" Klaustermeyer first made his application in the court of insolvency of Cuyahoga county, which *145 court denied his right to a lien, and dismissed his application.
An appeal was taken to the court of common pleas, which court allowed Klaustermeyer’s claim for a lien.
Error was then prosecuted to the circuit court, which court reversed the judgment of the court of common pleas and affirmed the judgment of the court of insolvency.
Error is now prosecuted to the supreme court to reverse the judgment of the circuit court.
It is admitted that if the trust company had selected and segregated any portion of the securities of the trust company and delivered them before assignment to said Klaustermeyer, said Klaustermeyer would then have had and held such portion as a pledge for the payment of the five-thousand-dollar loan.
But it is contended that a failure by said trust company to so select, segregate and deliver such securities to said Klaustermeyer, prevented the creation or operation of the lien because the said securities remained in the possession of the trust company.
Counsel for the trust company seem to have entirely misapprehended the very first essential of an equitable lien. 3 Pomeroy’s Equity Jurisprudence (3 ed.), Section 1233, lays down the generally accepted doctrine that it [equitable lien] is simply a right of a special nature over the thing, which constitutes a charge or an encumbrance upon the thing, so that the very thing itself may be proceeded against in an equitable action, and either sold or sequestered under the judicial de *146 cree, and its proceeds in the one case,' or its rents and profits in. the other, applied upon the demand of the creditor in whose favor the lien exists. It is the very essence of this condition that while-the lien continues the possession of the thing remains with the debtor or the person who holds the proprietary interest subject to the encumbrance.
Indeed, while possession of the property subject to the lien is generally in the creditor in common-law liens, in equity liens the possession must be in the debtor.
Counsel for the trust company further contend that, according to the same authority, Pomeroy, the agreement must deal with some particular property, either by identifying it or by so describing it that -it can be identified, and must indicate with sufficient clearness and intent that the property so identified or rendered capable of identification is to be held, given or transferred as security for the obligation; that there was a failure in this behalf and therefore no lien.'
■ The finding of fact by the common pleas court, and which was adopted by the circuit court, uses-this language:
“Those directors not indebted to the trust company and making deposits therewith, in accordance with said agreement, should be given security for such deposit, from among the collateral securities then owned by and in the possession of said trust company.”
Clearly, this identifies the fund or property which was to furnish the security and which was to be charged with a lien for the benefit of secur *147 ing Klaustermeyer’s loan. But it is said that this clearly indicates that there was to be. only some part, some portion or fraction, of said securities separated from the residue before the lien would attach.
Now, one of the fundamental maxims of equity is, “equity regards as doné that which ought to be done.”
“The broad meaning of this maxim is that where an obligation rests upon a person to perform an act equity will treat the person .in whose favor the act should be performed as clothed with the same interest and entitled to the same rights as if the act were actually performed. It is closely connected with and probably derived from the principle of regarding intent and substance rather than form. * * * The principle also lends its force to the establishment of liens and charges which could not be sustained at law, and to working out justice by fixing rights as of the time when the obligation first accrued, rather than according to circumstances subsequently arising.” 16 Cyc., 135.
What was the obligation and when did it accrue ?
Now, under the agreement between the officials of the bank and the directors, what ought The Euclid Avenue Trust Company to have done at once upon Klaustermeyer depositing his five thousand dollars as a loan to said trust company? What did the contract, the equities of the case and the good conscience of the parties require? Nothing short of what was done when Director Oram turned in his five thousand dollars, at which *148 time the bank immediately proceeded to select, segregate and deliver to Oram sufficient securities to secure the loan.
It is a primary principle of equity that when one party, has fully performed, the other party cannot base his defense upon his own default; that is, on his own failure to perform, and that is just what The Euclid Avenue Trust Company is endeavoring to do in this case. Their obligation was to select, segregate and deliver these securities at the time that Klaustermeyer turned over the five thousand dollars. It strains the imagination to conceive any rule of reason or right that would permit the trust company’s carelessness or default to cut off Klaustermeyer from his equitable rights.
It is a familiar rule that when funds or property belonging to one individual are wrongfully mixed or mingled with the funds of another individual, when that last individual is the one responsible for or participates in such wrongful commingling, the interest or lien is transferred from the first fund or property to the combined or commingled fund or property.
The theory is that equity will not permit the interest or lien to be cut off or lost by the wrongful act of the other party in the commingling of funds or property.
This doctrine of commingled funds is ably and fully discussed in a recent case by this court. Smith et al., Trustees, v. Fuller et al., Assignees, 86 Ohio St., 57. The fourth and fifth paragraphs of the syllabus of that case read as follows:
*149 “A. Where a trustee deposits trust money in a bank, taking as evidence thereof a certificate of deposit certifying that he as trustee has deposited the fund payable to self on return of the certificate properly indorsed, the same not being subject to check, and no stipulation for interest made, a presumption will be indulged, in the absence of proof to the contrary, that the trustee intended to perform and not violate his duty, and that the deposit was intended as a special, and not a general, deposit.
“5. Where, in such case, the bank fails and makes an assignment for the benefit of creditors before such fund is withdrawn, and it appears that the bank, upon receiving such deposit, had mingled the trust money with its own- funds, money paid out from such fund for its own purr poses will be presumed to have been paid from its own money, and not from the trust fund. And if it be shown that at all times from the making of the deposit, to the time of the assignment by the bank, there was in its vaults money of amount and value equal to the amount so deposited, a court of equity may engraft a trust upon such money, and the trustee will become a preferred creditor to the amount of such deposit.”
In the case of Smith v. Fuller, supra, the funds should have been kept separate but were commingled. In this case they should have been placed separate but were left commingled. Equity regards the substance and not the style of things, the fact and not the form. The lien was upon the whole fund because it was wrongfully commingled in the Smith case. The lien should be *150 upon the whole fund in this case because it was wrongfully left .commingled, when it was the duty of the trust company to separate and segregate it.
The act in.the Smith v. Fuller case, however, is an affirmative, positive, commissive act, but pray what is the distinction between such a commissive act that produces commingling of the funds and an omissive act in which the party is in default of what he promised or agreed to do, which omission has permitted and continued the commingling of the fund that should in good conscience have been separated? Equity in the former case of commission places the lien upon the whole wrongfully .commingled .fund; so equity in the case of an omission or default will place the lien upon the whole fund or property left wrongfully commingled.
It may be urged that the Smith case deals with a special deposit, which was wholly the particular and special property of a depositor, and that to protect such property it was necessary to declare a trust, but in this case there is no suggestion even of a trust. Why should we higgle over words where equity always disregards mere syllables of things in order to protect the substance? In any event an equitable interest or lien was found in certain property in order to do justice to all the parties, and there can be no complaint made •in this case that a like holding will do anything more or less than equity, both to Klaustermeyer and the trust company, and-that creditors will be in exactly the same situation as if Klaustermeyer had not loaned his five thousand dollars to the bank.
*151 The undisputed facts of the record go farther than the finding of the fact in the court of common pleas and circuit court, to-wit: That, if affirmatively does appear from the record that Klaustermeyer, on the morning of the assignment and before the assignment-was made, demanded of-the trust company, its officers and directors, the selection, segregation and delivery of sufficient securities to protect his loan. This appears from the record at page 36:
TESTIMONY OF MR. KLAUSTERMEYER.
“Q. The day they made the assignment you were at the bank? A. Yes.
“Q. Where were you at the bank, what part of the bank were you in, what room of the bank? A. In the basement.
“Q. In the directors’ room? A. Yes, sir.
“Q. Now, did you say anything at that time, before the assignment was made, about your collateral? A. Well, I asked for the collaterals, and then Mr. Ginn told me that I couldnt get them.
“Q. Whom did you ask for your collaterals af that time, before the assignment was made? A. I asked those that were in the room there at the bank.
“Q. Were they directors- of the bank? A. Yes, directors and officers.
“Q. Was Mr.- Thomas there? A. Yes, sir.
“Q. And Mr. Ginn spoke up and told you you couldn’t get them? A. Yes, he did.
“Q. Did he say why? A. He said the assignment was made and it was too late.
*152 • “Q. Well, the assignment at that time hadn’t been made, had it? A. Well, we had talked of it, but there was no papers gone out; they were all there.
“Q. The papers hadn’t been signed at that time, at the time you asked for your collateral, had they? A. No.”
This testimony is not contradicted by any of the officers or directors of the bank who were present on the morning of the assignment. The only other testimony in reference to this conversation is that of Mr. Ginn, who says that “he does not recall any such conversation.”
Clearly, that morning before the assignment, as Mr. Klaustermeyer testifies, he demanded his securities, and it was the duty of the bank to separate, segregate and deliver them to him by way of a pledge for the debt, as they had done in Oram’s case. That obligation rested upon the bank; the assignment simply transferred the same obligation or liability to the assignee, The Cleveland Trust Company.
It is agreed by counsel before this court that no rights of third parties have intervened to in any wise affect or modify the rights of the parties in the record. That being true, it must follow that the assignee, The Cleveland Trust Company, by virtue of the assignment, took the securities of the bank charged with all the liens and encumbrances upon them while in the hands of The Euclid Avenue Trust Company before the assignment. 3 Pomeroy’s Equity Jurisprudence (3 ed.), Section 1235.
*153 The bank got the five thousand dollars; the stockholders and creditors were enriched to that amount; they got it upon the distinct understanding that Klaustermeyer was to have securities out of the collateral then in the possession of the bank; the duty of the bank at once upon receiving the five thousand dollars was to turn over sufficient securities to protect Klaustermeyer; they failed to do that; what they ought to have done in law, equity will require them to do in effect.
“In modern times the doctrine of equitable liens has been liberally extended for the purpose of facilitating mercantile transactions, and in order that the intention of the parties to create specific charges may. be justly and effectually carried out.” Bispham’s Principles of Equity (8 ed.), Section 351.
What good conscience requires, equity should require, and while we are able to find no adjudicated case upon parallel facts, we are persuaded from the nature of the transaction, the relations and the rights of the parties, good conscience and sound morals among men in every-day business, that Klaustermeyer should have his lien for his loan.
A frequent recurrence to some old constitutional provisions will not be amiss in this case. Section 16 of the Bill of Rights of our Constitution reads:
“The courts shall be open, and every person, for an injury done him in his land, goods, person or reputation, shall have remedy by due course of law; and justice administered without denial or delay."
*154 How shall Klaustermeyer have due course of law? The letter of the law gives him no remedy, but the essentials of equity do furnish the remedy.
It is not improbable that there are no precedents for this holding. Indeed, there are many cases that seem to support the contrary view. But is it not better to regard a principle that does regard equity rather than a precedent that denies equity?
Equity is after all only a natural and necessary evolution of principle and policy to secure justice where the law obviously fails.
If the boundaries of equity are not broad enough to furnish, the relief, it is manifest that the boundaries should be extended, as courts heretofore have not hesitated to do. If there be no precedent for this judgment, it is time that a precedent were made.
There are too many hair-splitting distinctions in phrases where there is no honest difference in principle. What is a rule of equity worth that will not protect the equities of a case and the good conscience of the parties?
If the maxim “Equity will presume to have been done what ought to have been done under the contract and in good conscience”— if this maxim were not designed to meet just such cases under our constitution and our laws as this one, what,, pray, is its purpose? When jurisprudence becomes synonymous with justice, courts will be returned to that public confidence so necessary to stable and successful government. "
As was remarked by Judge Spear at the close of the case Smith v. Fuller, supra:
*155 “Nor is there any inequity in this conclusion. The funds of the bank in its vaults were increased by these deposits to t'he full amount thereof and nothing is asked to be taken away except what, by these deposits, was put there.”
To hold otherwise would be to permit one by his own wilful, reckless or wrongful act, by his own default and failure of a plain duty, to defeat the ends of simple justice.
The judgment of the circuit court is reversed and the judgment of the court of common pleas is affirmed, at the costs of the defendant in error.

Judgment reversed.

Nichols, C. J., Johnson, Donahue, Newman and Wilkin, concur.